# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

JOHN J. CALNIN, et al.,

        Plaintiffs,

    v.                             Case No. 05-C-694

WALLACE J. HILLIARD,

        Defendant.

---

JOHN F. BUTZ, et al.,

        Plaintiffs,

    v.                             Case No. 05-C-784
                                       (Consolidated with 05-C-694)

WALLACE J. HILLIARD,

        Defendant.

---

GREG J. DECLEENE, et al.,

        Plaintiffs,

    v.                             Case No. 05-C-958
                                       (Consolidated with 05-C-694)

WALLACE J. HILLIARD,

        Defendant.

---

REVOCABLE LIVING TRUST OF ROY
E. DOWNHAM of JANUARY 30, 1979, et al.,

        Plaintiffs,

    v.                             Case No. 05-C-1092
                                       (Consolidated with 05-C-694)

WALLACE J. HILLIARD,

        Defendant.

---

GREGORY J. LARSEN,

        Plaintiff,

    v.                             Case No. 05-C-1148
                                       (Consolidated with 05-C-694)

WALLACE J. HILLIARD,

        Defendant.

---

# ORDER

The plaintiffs in this consolidated action sue defendant Wallace J. Hilliard ("Hilliard") for allegedly violating the Securities Exchange Act of 1934, 17 C.F.R. § 240.10b-5(b); 15 U.S.C. § 78j, by making material misrepresentations and omissions in connection with the sale of securities. The plaintiffs also allege nine claims under Wisconsin and Florida state laws. The court has federal question jurisdiction over the first cause of action and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the nine state law claims. On May 4, 2007, Hilliard filed a motion for partial summary judgment and the plaintiffs also moved for summary judgment. On June 26, 2007, the plaintiffs withdrew their motion, noting that Hilliard's affidavit submitted in response to their motion created genuine issues of material fact. Accordingly, the court will deny the plaintiffs' motion as moot. Hilliard's motion for partial summary judgment will be granted in part and denied in part for the reasons stated below.

## BACKGROUND

The plaintiffs in *Calnin, et al. v. Hilliard*, Case No. 05-C-694, filed suit on July 1, 2005, and on November 16, 2005, the court consolidated *Calnin, et al.* with four other actions: *Butz, et al. v. Hilliard*, Case No. 05-C-784; *DeCleene, et al. v. Hilliard*, Case No. 05-C-958; *Downham, et al. v. Hilliard*, Case No. 05-C-1092; and *Larsen v. Hilliard*, Case No. 05-C-1148. On May 2, 2006, the plaintiffs in this consolidated action filed a third amended complaint, setting forth the following causes of action:

-2-

1.  Alleged misrepresentations in connection with sales and purchases of securities contrary to 17 C.F.R § 240.10b-5(b); 15 U.S.C. § 78j(b);

2.  Alleged misrepresentations in connection with sales and purchases of securities contrary to Wis. Stat. § 551.41(2) (2005-06);

3.  Alleged misrepresentations in connection with sales and purchases of securities contrary to Fla. Stat. § 517.301(a)(2)(2006);

4.  Alleged failure to register securities contrary to Wis. Stat. § 551.21(1);

5.  Alleged failure to register securities contrary to Fla. Stat. § 517.07(1);

6.  Alleged failure to obtain a license to sell securities contrary to Wis. Stat. § 551.31(1);

7.  Alleged failure to register to sell securities contrary to Fla. Stat. § 517.12(1);

8.  Alleged misrepresentations to induce members of the public to purchase securities contrary to Wis. Stat. § 100.18;

9.  Alleged strict liability misrepresentations; and

10. Alleged negligent misrepresentations.

The third amended complaint named 42 plaintiffs. Several plaintiffs voluntarily dismissed their claims and the following plaintiffs remain: John and Yvonne Calnin (the "Calnins"), Greg and Ann DeCleene (the "DeCleenes"), Flanagan Brothers, Inc. ("Flanagan Brothers"), the Alfred H. and Jeane K. Fleck Revocable Trust (the "Fleck Trust"), Alfred H. and Jeane K. Fleck (the "Flecks"), Thomas J. and Sarah Hahn (the "Hahns"), the Kenneth L. and Lucille C. Jossart Revocable Trust of January 29, 1994 (the "Jossart Trust"), Kenneth L. and Lucille C. Jossart (the "Jossarts"), David W.

and Yvonne M. Krutz Revocable Trust (the "Krutz Trust"), David W. and Yvonne M. Krutz (the "Krutzes"), Janice and David Schonke (the "Schonkes"), Stephen F. Schonke, Paul and Dawn Soletski (the "Soletskis"), Daniel Whetter ("Mr. Whetter"), and Donald and Rita Zellner (the "Zellners").

This case arises out of the plaintiffs' purchase of stock in Florida Air Holdings, Inc. ("FAH"), a Florida corporation that is now dissolved. Beginning in early 2001, Hilliard and others solicited a number of individuals, including the plaintiffs, to purchase stock in FAH. FAH's original business plan was to fly as a charter airline and as a regional commuter airline to provide services between cities in Florida otherwise lacking commuter air services. (Hilliard Aff. ¶ 9.) FAH had regulatory authority permitting it to fly as a charter airline, which FAH utilized until it went out of business in June 2004. FAH, however, did not have authority permitting it to fly as a scheduled commuter airline.

In February 2001, Hilliard acquired Sunrise Airlines, Inc. ("Sunrise"), which had filed for bankruptcy protection. Sunrise owned a Federal Aviation Regulation Part 121 Commuter Air Carrier Operating Certificate ("Certificate") which gave Sunrise regulatory authority to fly as a commuter airline. The Certificate, however, was suspended as a result of Sunrise's bankruptcy filing. In March 2001, Hilliard transferred his ownership of Sunrise capital stock to FAH and began efforts to activate Sunrise's commuter air carrier authority. If the U.S. Department of Transportation ("DOT") approved the Certificate for reinstatement, FAH would be able to operate as planned, as a commuter airline with scheduled routes between Florida cities.

On February 8, 2002, the DOT issued an "Order to Show Cause" tentatively approving the Certificate unless cause was shown indicating that the application for reinstatement should not be approved. In response to the Order to Show Cause, the Federal Aviation Administration ("FAA") notified the DOT that there were pending regulatory sanctions against another company owned by Hilliard, Plane-1 Leasing, Co. ("Plane-1"). The DOT requested an explanation concerning these pending regulatory sanctions against Plane-1. After the DOT received the explanation in May 2002, the DOT withdrew its tentative approval of the Certificate for reinstatement, citing the unresolved FAA allegations against Plane-1 as a significant contributing factor. (LaFramboise May 4, 2007 Decl. Exs. B and C.) Ultimately, as a result of the DOT's dismissal of the application for reinstatement, FAH went out of business in June 2004, when it was sold to Golden Airways, Inc.

Hilliard began soliciting funding for FAH in Wisconsin and Florida in early 2001. Hilliard distributed business plans, subscription agreements, and prospective investor letters to potential investors. The plaintiffs purchased stock in FAH at various times between February 2001 and March 2003. The plaintiffs allege that Hilliard misrepresented material facts and omitted facts material to the financial solvency of FAH and the ability of FAH to gain approval from the DOT to fly regularly scheduled commuter flights. For example, the plaintiffs contend that Hilliard made misrepresentations and omissions by: (1) failing to disclose the pending regulatory sanctions against Plane-1; (2) overstating FAH's assets such as the value of the airplanes and airplane parts that FAH purchased; and (3) omitting facts regarding the substantial liabilities of Sunrise and FAH such as Sunrise's failure to pay payroll

taxes to the Internal Revenue Service. The plaintiffs assert that these actions caused them to suffer financial losses.

## ANALYSIS

Summary judgment is appropriate where the moving party establishes that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Material facts" are those facts which "might affect the outcome of the suit," and a dispute about a material fact is "genuine" if a reasonable finder of fact could find in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate where a party has failed to make "a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. A party opposing summary judgment may not rest upon the mere allegations or denials of the adverse party's pleading, but must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). Any doubt as to the existence of a material fact is to be resolved against the moving party. *Anderson*, 477 U.S. at 255.

Hilliard moves for partial summary judgment pursuant to Fed. R. Civ. P. 56 on all the claims alleged by the plaintiffs, with the exception of some of the plaintiffs' claims alleged under the Wisconsin Uniform Securities Law and the Florida Securities Act; Hilliard concedes that genuine issues of material fact exist in regards to these claims. Hilliard sets forth several arguments in support of his motion for partial summary judgment. Specifically, Hilliard asserts: (1) the plaintiffs' claims

-6-

under Rule 10b-5 and the plaintiffs' common law claims of strict liability misrepresentation and negligent misrepresentation should be dismissed because the plaintiffs cannot prove any actual loss or any causal connection between the plaintiffs' actual loss and any misrepresentation or omission by Hilliard; (2) certain plaintiffs' claims are barred by the applicable statutes of limitations set forth in the Wisconsin Uniform Securities Law and the Florida Securities Act; (3) the Wisconsin Uniform Securities Law claims alleged by Stephen F. Schonke and the Hahns should be dismissed because these plaintiffs purchased FAH stock from outside Wisconsin; (4) plaintiffs' "failure to register" claims should be dismissed because the securities at issue were exempt from the registration requirements under the Wisconsin Uniform Securities Law and the Florida Securities Act; (5) plaintiffs' claims that Hilliard was required to obtain a license to sell securities under Wisconsin and Florida laws should be dismissed because Hilliard was exempt from the licensing requirements; (6) plaintiffs' claims of misrepresentation under Wis. Stat. § 100.18 should be dismissed; (7) the claims of plaintiffs the Perrets and Stephen F. Schonke should be dismissed for lack of reliance; and (8) the individual plaintiffs who were never owners of any FAH stock should be dismissed under Fed. R. Civ. P 17(a). The court will address Hilliard's arguments in turn.

First, Hilliard argues that the plaintiffs' Rule 10b-5 claims should be dismissed because "[t]he Plaintiffs have failed to produce any evidence of any actual out-of-pocket loss or evidence of any causal connection between any alleged misrepresentation or omission and any loss." (Def.'s Br. 10, May 4, 2007.) In order to prevail on a private cause of action under Rule 10b-5, plaintiffs must prove six

basic elements: (1) a material misrepresentation (or omission); (2) scienter; (3) a connection with the purchase or sale of a security; (4) justifiable reliance; (5) economic loss; and (6) "'loss causation,' i.e., a causal connection between the material misrepresentation and the loss." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005) (citations omitted); *see also Tricontinental Indus. v. PricewaterhouseCoopers, LLP*, 475 F. 3d 824, 842 (7th Cir. 2007), *Caremark, Inc. v. Coram HealthCare*., 113 F.3d 645, 648 (7th Cir. 1997). Hilliard argues that expert testimony is necessary to prove the fifth and sixth elements, economic loss and loss causation, and that the plaintiffs have failed to offer any admissible evidence of economic loss or loss causation.

With respect to Rule 10b-5 causes of action, causation has two necessary components: "transaction causation" and "loss causation." *Caremark, Inc.*, 113 F.3d at 648. "To plead transaction causation, the plaintiff must allege that it would not have invested in the instrument if the defendant had stated truthfully the material facts at the time of the sale." *Id.* "To plead loss causation, the plaintiff must allege that it was the very facts about which the defendant lied which caused its injuries." *Id.* The statute expressly imposes on the plaintiff "the burden of proving" that the defendant's misrepresentations "caused the loss for which the plaintiff seeks to recover." *Dura Pharm*, 544 U.S. at 345-46 (quoting 15 U.S.C. § 78u-4(a)(4)).

The plaintiffs contend that they have presented evidence of transaction causation and loss causation. The plaintiffs assert that they presented evidence demonstrating that Hilliard made material misrepresentations and omissions regarding FAH, and that these misrepresentations and omissions caused them to

suffer financial loss. Specifically, the plaintiffs allege Hilliard told the plaintiffs that they were purchasing an airline that would begin scheduled commuter service soon. (Plaintiffs' Proposed Findings of Fact ("PPFOF") ¶¶ 30, 31; Laframboise May 4, 2007 Decl. Ex. A-1, p. 4 ("Final DOT approval is pending but expected momentarily").) The plaintiffs also allege Hilliard failed to disclose significant problems with FAH and Hilliard's affiliated companies when he was soliciting their investments. The plaintiffs state that these hidden problems included the pending FAA sanctions against Plane-1, the fact that Sunrise owed approximately $300,000 in back payroll taxes, bank loan defaults of FAH and affiliated companies reaching approximately $8,000,000, and the financial problems of Discover Air, a company that FAH merged with in May 2002. (PPFOF ¶¶ 29, 48, 50, 67, 72.) The plaintiffs also state that they relied upon Hilliard's material misrepresentations and omissions regarding FAH's ability to obtain DOT approval to fly scheduled commuter flights when they purchased FAH stock. The plaintiffs state by affidavit that this omission caused them to suffer their financial losses. Specifically, the plaintiffs state that if "Hilliard had informed us of his problems with the Federal Aviation Administration, we would not have invested in the airline." (Affidavits of Flecks, Schonkes, Perrets, Krutzes, Calnins, Soletski, Downs, Whetter, Zellners, DeCleenes, Jossarts, Stephen F. Schonke, and Hahns at ¶ 2.) Hilliard disputes these allegations and notes that the plaintiffs were provided with written materials that disclosed that FAH did not have DOT approval to fly as a commuter airline and that FAH might not ever receive such approval. (LaFramboise May 4, 2007 Decl. Exs. T and Y.)

Hilliard asserts that the plaintiffs have failed to present evidence of loss causation. Hilliard states that the plaintiffs' sole expert witness presented no testimony to help a fact finder determine whether matters allegedly concealed or something else caused FAH to fail. Hilliard argues that the plaintiffs' failure to present any expert testimony regarding the cause of FAH's demise should be dispositive of their Rule 10b-5 claims because, in order to prove loss causation, the plaintiffs must distinguish between the fraud-related and non-fraud-related reasons behind the failure of an investment. In support of this position, Hilliard cites to *In re Imperial Credit Indus. Sec. Litig.*, 252 F. Supp. 2d 1005, 1015 (C.D. Cal. 2003). The plaintiffs contend that *Imperial Credit* is inapposite because *Imperial Credit*, unlike the instant case, dealt with publicly traded stocks. This case, the plaintiffs assert, is a simple case where FAH's inability to obtain DOT approval to fly scheduled commuter flights led to its demise. The plaintiffs argue that their loss was entirely caused by the fraud-related reasons.

The parties disagree as to what caused FAH to fail as a business. The plaintiffs assert that FAH's inability to obtain DOT approval to fly scheduled commuter flights doomed FAH as a business. The plaintiffs also assert that FAH failed to obtain the DOT approval primarily because of the pending FAA sanctions against Plane-1. Indeed, the DOT cited the unresolved FAA allegations against Plane-1 as a significant contributing factor to its decision to withdraw its tentative approval. (LaFramboise Decl. Exs. B and C.) Hilliard contends that DOT's decision was based on several factors in addition to the FAA's allegations. (*Id.* at Ex. C.)

Hilliard cites no binding authority that requires the plaintiffs to produce an event study conclusively demonstrating that Hilliard's alleged fraud-related conduct caused the plaintiffs' damages. The plaintiffs are required to demonstrate a "legally sufficient evidentiary basis" that would permit a reasonable finder of fact to conclude that Hilliard's alleged fraud-related conduct caused the plaintiffs' damages. *See Imperial Credit*, 252 F. Supp. 2d at 1014. The plaintiffs presented evidence suggesting that they relied upon Hilliard's material omissions described above when they invested in FAH, and they presented evidence suggesting that the FAA's pending regulatory sanctions against Plane-1, which were allegedly hidden from the plaintiffs when they invested, caused the plaintiffs to suffer pecuniary loss. Indeed, even though some of the plaintiffs may have offered various opinions at their depositions regarding the cause of FAH's demise, a reasonable finder of fact could conclude from the DOT letters (LaFramboise May 4, 2007 Decl. Exs. B and C) that the pending regulatory sanctions against Plane-1, and FAH's subsequent inability to obtain DOT approval to fly commuter flights, caused FAH to go out of business. Thus, viewing the facts in the light most favorable to the plaintiffs, as the court must, a reasonable finder of fact could conclude that Hilliard hid material facts from the plaintiffs in soliciting their investments and that the plaintiffs' losses were caused by these hidden facts. Furthermore, to defeat the plaintiffs' Rule 10b-5 claim at the summary judgment stage, Hilliard would have to establish that, as a matter of undisputed fact, the depreciation in the value of FAH's shares could not have resulted from the alleged fraud-related conduct. *See Caremark*, 113 F.3d at 650.

Hilliard, however, has not established that FAH's demise was not caused by any of the alleged fraud-related conduct.

The parties also dispute the actual value of the FAH shares purchased by the plaintiffs. The plaintiffs assert that the FAH shares they purchased were worthless in light of the alleged misrepresentations and omissions. Hilliard asserts that the shares had value at the time the plaintiffs invested because FAH operated as a charter airline and still had the potential to operate as a commuter airline. Although the plaintiffs have not presented expert testimony as to the specific amount of damages they suffered as a direct result of the alleged misrepresentations and omissions, the plaintiffs may be able to "establish 'facts and circumstances tending to show the probable amount of . . . damages' sufficient to allow the trier of fact to form a 'reasonable and probable estimate' of recoverable damages." *Miller v. Asensio & Co.*, 364 F.3d 223, 231 (4th Cir. 2004) (quoting *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 565 (1931)). In sum, genuine issues of material fact exist as to the cause of FAH's demise and the amount of damages that the plaintiffs would have incurred but for the alleged fraud-related conduct. In light of the foregoing, the court is obliged to deny Hilliard's motion for summary judgment on the plaintiffs' Rule 10b-5 claim.

Hilliard also asserts that plaintiffs' common law claims of strict liability misrepresentation and negligent misrepresentation should be dismissed because the plaintiffs cannot prove any actual loss or any causal connection between the plaintiffs' actual loss and any alleged fraud-related conduct by Hilliard. However, as noted above, the plaintiffs presented evidence from which a reasonable finder of fact

-12-

could conclude that Hilliard hid material facts from the plaintiffs in soliciting their investments and that the plaintiffs' losses were caused by these hidden facts. Accordingly, the court is obliged to deny Hilliard's motion for summary judgment on the plaintiffs' common law claims of strict liability misrepresentation and negligent misrepresentation.

Second, Hilliard argues that several of the plaintiffs' claims are barred by the applicable statutes of limitations. Prior to the Sarbanes-Oxley Act of 2002, securities fraud claims under Rule 10b-5 were subject to a one-year/three-year statute of limitations scheme, requiring a plaintiff to bring suit within one year of the discovery of facts constituting a violation, and within three years of the actual violation. *See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 364 (1991). However, the Sarbanes-Oxley Act lengthened this statute of limitations period by replacing the one-year/three-year scheme with a two-year/five-year scheme. *See* 28 U.S.C. § 1658(b). Hilliard concedes that all the plaintiffs commenced their respective actions within five years of their purchases of FAH stock. As such, Hilliard does not argue that the plaintiffs' Rule 10b-5 claims are time-barred. However, Hilliard does argue that the some of the plaintiffs' claims under the Wisconsin Uniform Securities Law and the Florida Securities Act are time-barred by the applicable statutes of limitations.

Claims brought under the Wisconsin Uniform Securities Law are subject to a three-year statute of limitations. Wis. Stat. § 551.59(5) ("[n]o action shall be maintained under this section unless commenced before the expiration of 3 years after the act or transaction constituting the violation . . . ."). The plaintiffs did not

respond to Hilliard's argument that some of the plaintiffs' claims under the Wisconsin Uniform Securities Law, Wis. Stat. §§ 551.21, 554.31, and 554.41, are time-barred by the three-year statute of limitations. Thus, pursuant to Wis. Stat. § 551.59(5), all the plaintiffs' Wisconsin Uniform Securities Law claims arising from stock purchases occurring more than three years before the filing of their claims are time-barred by the statute of limitations. The affected claims are as follows:

The Calnins' Wisconsin Uniform Securities Law claims filed on July 1, 2005, regarding stock purchased on March 28, 2002, and June 6, 2002;

The DeCleenes' Wisconsin Uniform Securities Law claims filed on September 6, 2005, regarding stock purchased on August 15, 2002;

The Flanagan Brothers' Wisconsin Uniform Securities Law claims filed on July 21, 2005, regarding stock purchased on January 17, 2002;

The Fleck Trust's Wisconsin Uniform Securities Law claims filed on September 16, 2005, regarding stock purchased on October 26, 2001, and February 16, 2001;

The Hahns' Wisconsin Uniform Securities Law claims filed on September 16, 2005, regarding stock purchased on May 7, 2001;

The Jossart Trust's Wisconsin Uniform Securities Law claims filed on September 16, 2005, regarding stock purchased on August 17, 2001, and December 14, 2001;

The Krutz Trust's Wisconsin Uniform Securities Law claims filed on September 16, 2005, regarding stock purchased on May 31, 2002;

The Perrets' Wisconsin Uniform Securities Law claims filed on September 16, 2005, regarding stock purchased on January 4, 2002;

The Schonkes' Wisconsin Uniform Securities Law claims filed on July 1, 2005, regarding stock purchased on April 9, 2001, and June 12, 2001;

The Soletskis' Wisconsin Uniform Securities Law claims filed on July 1, 2005, regarding stock purchased on May 4, 2002;

Mr. Whetter's Wisconsin Uniform Securities Law claims filed on July 21, 2005, regarding stock paid for[1] on July 12, 2002; and

The Jossarts' Wisconsin Uniform Securities Law claims filed on September 16, 2005, regarding the unpaid amount of $80,000 on the loan as of October 2001.

Because the plaintiffs do not dispute that these claims are time-barred by the three-year statute of limitations under Wis. Stat. § 551.59(5), the court will grant summary judgment in favor of Hilliard on these claims. For the sake of clarity, the court notes that the following Wisconsin Uniform Securities Law claims are not time-barred by Wis. Stat. § 551.59(5):

The Calnins' Wisconsin Uniform Securities Law claims filed on July 1, 2005, regarding stock purchased on January 31, 2003, in the amount of $20,000;

The Flanagan Brothers' Wisconsin Uniform Securities Law claims filed on July 21, 2005, regarding stock purchased on July 31, 2002, in the amount of $100,000;

The Krutz Trust's Wisconsin Uniform Securities Law claims filed on September 16, 2005, regarding stock purchased on February 26, 2003, in the amount of $20,000;

The Perrets' Wisconsin Uniform Securities Law claims filed on September 16, 2005, regarding stock purchased on March 11, 2003, in the amount of $20,000;

Stephen F. Schonke's Wisconsin Uniform Securities Law claims filed on July 1, 2005, regarding stock purchased on August 29, 2002, in the amount of $50,000; and

---

[1]Although Mr. Whetter signed the Subscription Agreement on July 24, 2002, he paid for his stock on July 12, 2002. The plaintiffs do not contest Hilliard's assertion that the date on which Mr. Whetter paid for the stock, July 12, 2002, is the date on which the statute of limitations started to run under the "commitment theory" of securities law. *See APA Excelsior III L.P. v. Premiere Techs.*, 476 F.3d 1261, 1267 (11th Cir. 2007).

The Zellners' Wisconsin Uniform Securities Law claims filed on July 1, 2005, regarding stock purchased on October 1, 2002, in the amount of $50,000.

Hilliard also argues that the Florida Securities Act claims of the following plaintiffs are time-barred by the statute of limitations set forth in Fla. Stat. § 95.11(4)(e): the De Cleenes, the Flanagan Brothers, The Krutz Trust, Stephen F. Schonke, Mr. Whetter, and the Zellners. The statute of limitations for securities fraud under the Florida Securities Act has two components. First, "the law suit must be commenced within two years 'from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence.'" *Byrne v. Golfstream First Bank & Trust Co.*, 528 F. Supp. 692, 695 (S.D. Fla. 1981) (quoting Fla. Stat. § 95.11(4)(e)). "[T]he second prong of the test . . . requires that actions of this type be instituted 'not more than five years from the date [the] violation occurred.'" *Id.* The "violation" that starts the limitations period is when the purchaser contracts to buy the security. *Armbrister v. Roland International Corp.*, 667 F. Supp. 802, 823 (M.D. Fla. 1987).

Although all the plaintiffs commenced their respective actions within five years of their purchases of FAH stock, Hilliard asserts that plaintiffs the De Cleenes, the Flanagan Brothers, The Krutz Trust, Stephen F. Schonke, Mr. Whetter, and the Zellners all received a letter and additional "compensatory" stock in April 2003 that should have put these plaintiffs on notice of their claims more than two years before they filed their Florida Securities Act claims. The April 2003 letter to these plaintiffs provides, in relevant part:

> Wally Hilliard has appealed to the board of directors of Florida Air
> Holdings, Inc. to offer compensation to the investors who purchased
> stock at the price of $400.00 per share during the period of May to
> December, 2002. The price per share was predicated on the value that
> Discovery Air brought to the company.

(Ostrow Aff. Ex. H.) Hilliard asserts that the April 2003 letter should have indicated to these plaintiffs that they were being compensated for untrue representations regarding the value of FAH's stock. Hilliard asserts that because these plaintiffs waited for over two years from the date of this letter to file their Uniform Florida Securities Act claims, the claims are barred by Fla. Stat. § 95.11(4)(e).

In response, the plaintiffs note that their claims are based on more than just the allegedly hidden financial problems of Discover Air and FAH's acquisition of Discover Air. And the plaintiffs point out that the April 2003 letter does not mention anything about the facts underlying the plaintiffs' claims regarding the FAA allegations against Plane-1, the approximately $300,000 in back payroll taxes owed by Sunrise, or the bank loan defaults of FAH and affiliated companies reaching approximately $8,000,000. According to the plaintiffs, the April 2003 letter did not put them on notice of their claims because it did not suggest any wrong-doing or misrepresentation; rather, the letter appeared to simply be correcting a mistake. The plaintiffs state that they did not learn of the alleged misrepresentations and omissions giving rise to their claims until after FAH went out of business in June 2004. (Affidavits of Flecks, Schonkes, Perrets, Krutzes, Calnins, Soletski, Downs, Whetter, Zellners, DeCleenes, Jossarts, Stephen F. Schonke, and Hahns at ¶ 4.) Thus, viewing the facts in the light most favorable to the plaintiffs, a reasonable finder of fact could conclude that the plaintiffs who received the April 2003 letter

were not put on notice of their Florida Securities Act claims by receiving that letter. As such, these claims may not be time-barred by the statute of limitations, Fla. Stat. § 95.11(4)(e), and the court is obliged to deny Hilliard's motion for summary judgment on these claims.

Third, Hilliard argues that the Wisconsin Uniform Securities Law claims alleged by Stephen F. Schonke and the Hahns should be dismissed because these plaintiffs purchased FAH stock from outside Wisconsin and that Act does not apply to transactions occurring outside Wisconsin. These plaintiffs have alleged Wisconsin Uniform Securities Law claims under Chapter 551 of the Wisconsin Statutes. The territorial scope of Chapter 551 is as follows:

> (1) The provisions of this chapter concerning sales and offers to sell apply when a sale or offer to sell is made in this state or when an offer to purchase is made and accepted in this state. The provisions concerning purchases and offers to purchase apply when a purchase or offer to purchase is made in this state or an offer to sell is made and accepted in this state.

Wis. Stat. § 551.66(1). Hilliard asserts that Stephen F. Schonke and the Hahns cannot raise claims under the Wisconsin Uniform Securities Law because they purchased FAH stock outside Wisconsin, FAH is a Florida corporation, Hilliard is a resident of Florida, and the only contact between Hilliard and Stephen F. Schonke and Mr. Hahn was by telephone, facsimile, or mail from Florida, when Stephen F. Schonke was in Germany and Mr. Hahn was in Guam. (Hilliard Aff. ¶¶ 38, 39.) To the best of his recollection, Hilliard believes that any communications from him to these plaintiffs originated in Florida. (*Id.*) Thus, Hilliard asserts, because there was no contact between the State of Wisconsin and Mr. Hahn's or Stephen F. Schonke's

transactions, the plain language of Wis. Stat. § 551.66 requires the dismissal of the Hahns' and Stephen F. Schonke's claims under the Wisconsin Uniform Securities Law.

In response, the plaintiffs contend that Hilliard's affidavit, indicating that, to the best of his recollection, any communications from him to Stephen F. Schonke or Mr. Hahn originated in Florida, offers insufficient evidence to warrant summary judgment on these claims. (Hilliard Aff. ¶¶ 38, 39.) The plaintiffs suggest that in order for Hilliard to be entitled to summary judgment on these claims, he must offer proof that he did not make an offer of FAH stock to Stephen F. Schonke or the Hahns from Wisconsin.

While it is true that any doubt as to the existence of a material fact is to be resolved against Hilliard, the moving party, the plaintiffs may not rest upon the mere allegations or denials of the adverse party's pleading, but must set forth specific facts showing that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 255; Fed. R. Civ. P. 56(e). Here, the plaintiffs offer no evidence suggesting that Hilliard initiated any communication with Stephen F. Schonke or the Hahns from Wisconsin. Because the plaintiffs failed to present any evidence sufficient to establish that there was any relevant contact between the State of Wisconsin and Stephen F. Schonke's or the Hahns' transactions, an element essential to these plaintiffs' Wisconsin Uniform Securities Law claims, *see* Wis. Stat. § 551.66(1)-(4), the court is obliged to grant summary judgment in favor of Hilliard on these claims. *See Celotex*, 477 U.S. at 322-23. Accordingly, Stephen F. Schonke's and the Hahns' Wisconsin Uniform Securities Law claims will be dismissed.

Fourth, Hilliard argues that the plaintiffs' "failure to register" claims should be dismissed because the securities at issue were exempt from the registration requirements under the Wisconsin Uniform Securities Law and the Florida Securities Act. The plaintiffs' third amended complaint raises "failure to register" claims under Wisconsin and Florida laws. Wis. Stat. § 551.21; Fla. Stat. § 517.07. Under Wis. Stat. § 551.21, securities sold in the State of Wisconsin must be registered with the Department of Financial Institutions. However, registration is not required if the security or transaction is exempt under § 551.22 or § 551.23. *See* Wis. Stat. § 551.21(1)(b). Wisconsin Statute § 551.23 exempts from registration "[a]ny offer or sale of a security to . . . [a]n accredited investor." Wis. Stat. § 551.23(8)(g). Similarly, under Fla. Stat. § 517.07, securities sold in the State of Florida must also be registered. *See* Fla. Stat. § 517.07(1). However, registration is not required if the security or transaction is exempt under § 517.061. *See id.* Florida statute § 517.061 exempts securities offerings involving no more than 35 purchasers. *See* Fla. Stat. § 517.061(11)(a)(1). And accredited investors are excluded from the purchasers counted toward calculation of the total number of purchasers. Fla. Stat. § 517.061(11)(b)(5). Hilliard asserts that because the plaintiffs were accredited investors, the securities at issue were exempt from the registration requirements under the Wisconsin Uniform Securities Law and the Florida Securities Act, and, therefore, the plaintiffs' "failure to register" claims should be dismissed.

It is undisputed that upon purchasing stock in FAH, each of the plaintiffs signed a Subscription Agreement in which they represented and warranted that they were accredited investors. The plaintiffs did not respond to this argument in their

brief in opposition to Hilliard's motion for partial summary judgment, but in their brief in support of their motion for summary judgment, they state that Stephen F. Schonke and the Hahns were not accredited investors when they purchased FAH stock. However, as noted above, these plaintiffs cannot raise claims under the Wisconsin Uniform Securities Law. In addition, even if Stephen F. Schonke and the Hahns were not accredited investors, they would have been the only two unaccredited investors, and, therefore, the sales of FAH stock fell within the 35 purchaser requirement in Fla. Stat. § 517.061(11)(a)(1) rendering the transactions exempt. In light of the foregoing, the court is obliged to conclude that the securities at issue were exempt from each state's securities registration requirements. Accordingly, the court will grant summary judgment in favor of Hilliard on the plaintiffs' "failure to register" claims, and these claims, the fourth and fifth causes of action in the plaintiffs' third amended complaint, will be dismissed.

Fifth, Hilliard argues that the plaintiffs' claims that he was required to obtain a license to sell securities under Wisconsin and Florida laws should be dismissed because he was exempt from the licensing requirements. The plaintiffs allege Hilliard was required under Wisconsin and Florida laws to register to sell securities. Agent licensing in Wisconsin is required under Wis. Stat. § 551.31. The plaintiffs allege Hilliard was an "agent" within the meaning of Wis. Stat. § 551.02(2), and that he failed to obtain a license as required by Wis. Stat. § 551.31(1). Wisconsin Statute § 551.02(2) defines an "agent" as follows:

"Agent" means any individual other than a broker-dealer who represents a broker-dealer or issuer in effecting or attempting to effect transactions in securities.  A partner, officer or director of a broker-dealer or issuer, or a person occupying a similar status or performing similar functions, is an agent if he or she is within this definition.  "Agent" does not include an individual who represents an issuer in doing any of the following:

> (a)     Effecting transactions in a security exempted by s. 551.22.

> (b)     Effecting transactions exempted by s. 551.23, other than transactions exempted under s. 551.23 (8) (g), (10) or (19) in which the individual receives a commission or other remuneration directly or indirectly for soliciting or selling to any person in this state.

> (c)     Effecting other transactions if no commission or other remuneration is paid or given directly or indirectly for soliciting any person in this state.

Wis. Stat. § 551.02(2).

It is undisputed that Hilliard did not receive any commission or other remuneration directly or indirectly for soliciting or selling FAH stock.  Accordingly, Hilliard was not an "agent" within the meaning of Wis. Stat. § 551.02(2).  Furthermore, licensing is not required if the person is exempt under Wis. Stat. § 551.31(1)(d).  Wisconsin Statute § 551.31(1)(d) exempts an "agent who is acting exclusively as an agent representing an issuer of securities and who makes offers and sales of the issuer's securities in transactions that are exempt under s. 551.23(8)(g) . . . ."  Wis. Stat. § 551.31(1)(d).  As noted above, all of the transactions were exempt under Wis. Stat. § 551.23(8)(g) because the transactions were sales to accredited investors.  As such, the court concludes that Hilliard was exempt from the licensing requirements under Wis. Stat. § 551.31.  In addition, the plaintiffs did not respond to Hilliard's argument that he was also exempt from the

-22-

licensing requirements under the Florida Securities Act. *See* Fla. Stat. § 517.12(3) ("registration requirements of this section do not apply in a transaction exempted by s. 517.061(1)-(12) . . . .") Accordingly, the court will grant summary judgment in favor of Hilliard on the plaintiffs' claims that Hilliard failed to obtain a license under Wis. Stat. § 551.31(1) and Fla. Stat. § 517.12, and these claims, the sixth and seventh causes of action in the plaintiffs' third amended complaint, will be dismissed.

Sixth, Hilliard raises several arguments against the plaintiffs' claims of misrepresentation under Wis. Stat. § 100.18. Wisconsin Statute § 100.18(1) prohibits the making "to the public" of an advertisement, statement, or representation which "contains any assertion, representation or statement of fact which is untrue, deceptive or misleading." *Id.* Hilliard asserts that all the plaintiffs' claims under Wis. Stat. § 100.18 should be dismissed because the claims are based on alleged failures to disclose, not misrepresentations, and nondisclosures are not actionable under § 100.18. *See Tietsworth v. Harley Davidson*, 2004 WI 32, ¶ 40, 270 Wis. 2d 146, 677 N.W.2d 233 ("Silence - an omission to speak - is insufficient to support a claim under Wis. Stat. § 100.18(1)."). Hilliard also argues that the plaintiffs' Wis. Stat. § 100.18 claims should be dismissed because the plaintiffs have failed to produce evidence of any pecuniary loss caused by any misrepresentation by Hilliard. Section 100.18(11)(b)2 creates a cause of action in favor of "[a]ny person suffering pecuniary loss because of a violation of this section by any other person," to "recover such pecuniary loss, together with costs, including reasonable attorney fees . . . ." *Id.*

The plaintiffs contend that they presented evidence demonstrating that their claims are based on Hilliard's material misrepresentations, in addition to omissions. For example, the plaintiffs allege Hilliard told them that they were purchasing an airline that would begin scheduled commuter service soon. (PPFOF ¶¶ 30, 31; Laframboise May 4, 2007 Decl. Ex. A-1, p. 4 ("Final DOT approval is pending but expected momentarily").) In addition, the plaintiffs presented evidence to support their claim that Hilliard misrepresented the financial status of FAH by inflating the value of his contribution to the airline. (LaFramboise May 4, 2007 Decl. Exs. X and Y.) And, as noted above, the plaintiffs presented evidence to support their claims that they relied upon Hilliard's alleged misrepresentations (and omissions) when they invested in FAH, and that these material misrepresentations (and omissions) caused the plaintiffs to suffer pecuniary loss. (PPFOF ¶¶ 29, 48, 50, 67, 72; Affidavits of Flecks, Schonkes, Perrets, Krutzes, Calnins, Soletski, Downs, Whetter, Zellners, DeCleenes, Jossarts, Stephen F. Schonke, and Hahns at ¶ 2.) Although these material facts are disputed, viewing the facts in the light most favorable to the plaintiffs, a reasonable finder of fact could conclude that Hilliard made misrepresentations which caused the plaintiffs to suffer pecuniary loss. Accordingly, the court will deny Hilliard's motion to dismiss all the plaintiffs' claims under Wis. Stat. § 100.18.

However, Hilliard has demonstrated that, for the reasons stated below, he is entitled to summary judgment on all but one of the plaintiffs' Wis. Stat. § 100.18 claims. Wisconsin Statute § 100.18 only applies to statements made "to the public," and statements made to persons with whom a contractual relationship exists are not

statements made "to the public" within the meaning of § 100.18. *See Kailin v. Armstrong*, 2002 WI App. 70, ¶ 44, 252 Wis. 2d 676, 643 N.W. 2d 132 (2002). Hilliard asserts that, under the holding in *Kailin*, once the plaintiffs purchased FAH shares and became co-owners of FAH, their subsequent additional purchases were not subject to § 100.18. The plaintiffs contend that § 100.18 does apply to their subsequent additional purchases, because the subsequent purchases required the plaintiffs to enter into new Subscription Agreements. However, it is undisputed that at the time the plaintiffs made the subsequent purchases, they had a "particular relationship" with Hilliard (as co-owners) and FAH (as owners). And "the important factor in defining 'the public' is 'whether there is some particular relationship between the parties.'" *Kailin*, 2002 WI App. 70, ¶ 44 (quoting *State v. Automatic Merchandisers of Am., Inc.*, 64 Wis. 2d 659, 664, 221 N.W.2d 683 (1974)). Therefore, under the holding of *Kailin*, once the plaintiffs purchased FAH stock, they did not qualify as "the public" under the statute for their subsequent purchases. *See id.* As such, the court concludes that the plaintiffs' Wis. Stat. § 100.18 claims involving the following purchases should be dismissed as "second purchases" outside of the scope of Wis. Stat. § 100.18:

The Calnins' purchases on June 6, 2002, and January 31, 2003;

The Flanagan Brothers' purchase on July 31, 2002;

The Fleck Trust's purchase on October 26, 2001;

The Jossart Trust's purchase on December 14, 2001;

The Krutz Trust's purchase on February 26, 2003;

Case 1:05-cv-00694-PJG   Filed 02/05/08   Page 25 of 32   Document 121

The Perrets' purchase on March 11, 2003; and

Mrs. Schonke's purchase on June 12, 2001.

In addition, the plaintiffs do not dispute that all their § 100.18 claims arising from stock purchases occurring more than three years before the filing of their claims are time-barred by the three-year statute of limitations set forth in § 100.18(11)(b)3. Thus, the following Wis. Stat. § 100.18 claims are time-barred by Wis. Stat. § 100.18(11)(b)3:

The Calnins' Wis. Stat. § 100.18 claims filed on July 1, 2005, regarding stock purchased on March 28, 2002, and June 6, 2002;

The DeCleenes' Wis. Stat. § 100.18 claims filed on September 6, 2005, regarding stock purchased on August 15, 2002;

The Flanagan Brothers' Wis. Stat. § 100.18 claims filed on July 21, 2005, regarding stock purchased on January 17, 2002;

The Fleck Trust's Wis. Stat. § 100.18 claims filed on September 16, 2005, regarding stock purchased on February 16, 2001, and October 26, 2001;

The Hahns' Wis. Stat. § 100.18 claims filed on September 16, 2005, regarding stock purchased on May 7, 2001;

The Jossart Trust's Wis. Stat. § 100.18 claims filed on September 16, 2005, regarding stock purchased on August 17, 2001, and December 14, 2001;

The Krutz Trust's Wis. Stat. § 100.18 claims filed on September 16, 2005, regarding stock purchased on May 31, 2002;

The Perrets' Wis. Stat. § 100.18 claims filed on September 16, 2005, regarding stock purchased on January 4, 2002;

The Schonkes' Wis. Stat. § 100.18 claims filed on July 1, 2005, regarding stock purchased on April 9, 2001, and June 12, 2001;

The Soletskis' Wis. Stat. § 100.18 claims filed on July 1, 2005, regarding stock purchased on May 4, 2002;

Mr. Whetter's Wis. Stat. § 100.18 claims filed on July 21, 2005, regarding stock paid for (*see* footnote no. 1 on p. 16 above) on July 12, 2002; and

The Jossarts' Wis. Stat. § 100.18 claim filed on September 16, 2005, regarding the unpaid amount of $80,000 on the loan as of October 2001.

Because the plaintiffs do not dispute that these claims are time-barred by the three-year statute of limitations under Wis. Stat. § 100.18(11)(b)3, the court will grant summary judgment in favor of Hilliard on these claims.

The plaintiffs also do not contest Hilliard's argument that "compensatory" stock issued to certain plaintiffs on April 25, 2003, was not induced by statements or advertisements and thus, is excluded from the scope of Wis. Stat. § 100.18. In addition, although Stephen F. Schonke's § 100.18 claim filed on July 1, 2005, regarding stock purchased on August 29, 2002, is not time-barred by Wis. Stat. § 100.18(11)(b)3, or a "second purchase" outside of the scope of Wis. Stat. § 100.18, as noted above, the plaintiffs presented no evidence sufficient to establish that there was any relevant contact between Wisconsin and Stephen F. Schonke's transactions. The scope of Wis. Stat. § 100.18(1) is limited to publications "in this state." *Id.* Accordingly, Stephen F. Schonke's § 100.18 claim will be dismissed because there is no evidence of contact between the State of Wisconsin and Stephen F. Schonke' transactions, an element essential to his § 100.18 claim. *See Celotex*, 477 U.S. at 322-23. In light of the foregoing, the court notes that the Zellners' § 100.18 claim filed on July 1, 2005, regarding stock purchased on October 1, 2002, in the amount of $50,000, is the only § 100.18 claim that is not time-barred

by Wis. Stat. § 100.18(11)(b)3, or dismissed as a "second purchase" or otherwise outside of the scope of Wis. Stat. § 100.18.

Seventh, Hilliard argues that all the claims of the Perrets and Stephen F. Schonke should be dismissed for lack of reliance. Proof of reliance on a misrepresentation is a requirement for a cause of action under Rule 10b-5, as well as for a claim under the Wisconsin Uniform Securities Law, the Florida Securities Act, and under the common law of misrepresentation. *See TriContinental*, 475 F.3d at 842; *Carney v. Mantuano*, 204 Wis. 2d 527, 554 N.W.2d 854 (Wis. Ct. App. 1996) (Wisconsin Uniform Securities Law); *E.F. Hutton & Co. v. Rousseff*, 537 So. 2d 978 (Fla. 1989) (Florida Securities Act); *Lewis v. Paul Revere Life Ins. Co.*, 80 F. Supp. 2d 978, 999 (E.D. Wis. 2000) (misrepresentation); *Whipp v. Iverson*, 43 Wis. 2d 166, 169-70, 168 N.W.2d 201 (1969) (misrepresentation). "A fraudulent representation . . . is actionable only if there is reasonable reliance, a requirement intended in part to screen out trivial or concocted fraud claims." *In re Barnes*, 969 F.2d 526, 529 (7th Cir. 1992) (applying Wisconsin law).

Hilliard states that he did not speak to the Perrets or Stephen F. Schonke or send them written documents regarding FAH before these plaintiffs purchased FAH shares. In fact, these plaintiffs purchased FAH shares based upon conversations they had with relatives who already owned FAH shares. Hilliard asserts that since he had no direct contact with these plaintiffs before they purchased FAH shares, there is no way they could have relied upon any alleged misrepresentation or omission by Hilliard. And any alleged misrepresentation or omission that occurred after these plaintiffs purchased their shares cannot provide a basis for their claims.

*See APA Excelsior III L.P.*, 476 F. 3d at 1267 (quoting *SEC v. Nat'l Student Mktg. Corp.*, 457 F. Supp. 682, 703-04 (D.D.C. 1978) ("'there is little justification for penalizing alleged omissions or misstatements which occur thereafter and which have no effect on the decision.'")). As such, Hilliard asserts, the claims of these plaintiffs should be dismissed for lack of reliance.

The plaintiffs agree that reliance is a necessary element of their claims; however, they contend that there is no requirement that the alleged misrepresentations or omissions be *directly* communicated to the plaintiff. The plaintiffs allege that the Perrets and Stephen F. Schonke relied upon misrepresentations and omissions made by Hilliard when they purchased their FAH shares, and these misrepresentations and omissions were communicated to these plaintiffs through other individuals. The plaintiffs assert that the injuries of the Perrets and Stephen F. Schonke were a direct result of the actions of Hilliard, and the fact that Hilliard's communications did not come directly from him should not be fatal to their claims. *See, e.g, Schaefer v. First Nat'l Bank*, 326 F. Supp. 1186, 1193 (N.D. Ill. 1970) ("privity is not required for an action to be maintainable under Rule 10b-5"); *Geo. H. McFadden & Bro., Inc. v. Home-Stake Production Co.*, 295 F. Supp. 587, 589 (N.D. Okl. 1968) ("one may recover for an SEC violation falling under Rule 10b-5 even though there is no direct personal relationship.").

Hilliard cites no binding authority suggesting that an alleged misrepresentation or omission must be communicated directly from the defendant to the plaintiff in order to establish reliance. Indeed, Rule 10b-5 provides that it is "unlawful for any person, *directly or indirectly*" to make any material misrepresentation or omission in

connection with the sale of securities. 17 C.F.R. § 240.10b-5 (emphasis added); *see also Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1226 (10th Cir. 1996) ("[t]here is no requirement that the alleged violator directly communicate misrepresentations to plaintiffs for primary liability to attach.") (citing *SEC v. Holschuh*, 694 F.2d 130, 142 (7th Cir. 1982)). Stephen F. Schonke's father, David Schonke, testified at his deposition that Hilliard failed to disclose the FAA allegations to him before he invested in FAH. (Laframboise June 11, 2007 Decl. Ex. JJ.) And Stephen F. Schonke testified at his deposition that he relied upon conversations with his father when he purchased FAH stock. (Ostrow Aff. Ex. CC.) Similarly, David Perret testified at his deposition that he learned from his brother-in-law, Kenneth Jossart, that according to Hilliard, FAH was about to start flying. (LaFramboise June 11, 2007 Decl. Exs. GG and II; PPFOF ¶¶ 82, 84.) The fact that the alleged misrepresentations or omissions were not directly communicated to these plaintiffs by Hilliard does not require the court to conclude that these plaintiffs cannot establish that they relied upon the alleged misrepresentations or omissions made by Hilliard. Indeed, viewing the facts in the light most favorable to the plaintiffs, a reasonable finder of fact could conclude that Hilliard made the alleged misrepresentations or omissions knowing they would be communicated to other investors, and that the Perrets and Stephen F. Schonke relied upon these alleged misrepresentations or omissions. Accordingly, the court will deny Hilliard's motion for summary judgment on all the claims of the Perrets and Stephen F. Schonke for lack of reliance.

Finally, Hilliard argues that the individual plaintiffs who were never owners of any FAH stock should be dismissed under Fed. R. Civ. P 17(a). Rule 17(a) requires that claims be prosecuted in the name of the real party in interest. It is undisputed that the Jossart Trust and the Krutz Trust were shareholders in FAH and are, therefore, real parties in interest. Hilliard asserts that the Jossarts and the Krutzes, as beneficiaries of their respective trusts, are not real parties in interest. However in addition to being beneficiaries of their respective trusts, the Jossarts and the Krutzes are also trustees of their respective trusts, authorized to pursue claims on behalf of the trusts. (Third Am. Compl. ¶¶ 17, 23.) Therefore, as the trustees of their respective trusts, it appears the Jossarts and the Krutzes are also real parties in interest. *See, e.g, Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 465 (1980) (holding that a trustee is a real party to the controversy when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others). Accordingly, even though the plaintiffs did not respond to this argument, the court will deny Hilliard's motion for summary judgment on the individual claims of the Jossarts and the Krutzes.

Accordingly,

**IT IS ORDERED** that the defendant's motion for partial summary judgment (Docket # 77) be and the same is hereby **GRANTED** in part, and **DENIED** in part, as set forth above;

**IT IS FURTHER ORDERED** that the fourth, fifth, sixth, and seventh causes of action in the plaintiffs' third amended complaint be and the same are hereby **DISMISSED** for the reasons set forth above;

**IT IS FURTHER ORDERED** that the plaintiffs' motion for summary judgment

(Docket # 81) be and the same is hereby **DENIED** as moot.

Dated at Milwaukee, Wisconsin, this 5th day of February, 2008.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge